## Stewart's Administrators *versus* Lang *et al.*

*Executory Contract for Sale of Lands.*

1. The intention of the parties to a written agreement, drawn from all its parts, is the criterion to decide whether it operates as a present conveyance or as an executory contract.

2. An informal instrument, called by the parties an agreement, expressed to be in consideration of future covenants to be done and performed, and with no present sum in hand paid, containing no words of inheritance, and without the formal acknowledgment of a deed, was held to be an executory contract only, and not a present conveyance, though it contained words of present assurance, "doth and hath by these presents granted, bargained, sold, and for ever quit claim," &c.

ERROR to the Common Pleas of *Jefferson county*.

This was an action of ejectment, brought by Robert Stewart and John Scott, administrators of George Stewart, against John Lang, to recover a balance of the purchase-money due on a tract of land (described in the writ), under an article of agreement between the deceased and his son, William A. Stewart, dated January 1st 1859. The defendant entered the usual plea of "not guilty," and on this issue the cause was tried.

A suit had been pending between George Stewart and his son William, which was compromised on the day the agreement was made. The contract was in these words:—

"Agreement, made this first day of January 1849, by and between George Stewart and William Stewart, all of Perry township, Jefferson county, witnesseth, that the said George Stewart, for and in consideration of the covenants to be done and performed by the said William Stewart, he doth and hath by these presents granted, bargained, sold, and for ever quit claim unto the tract of land and premises whereon the said William now lives, in Perry township aforesaid, and to withdraw or discontinue all suits or suit now brought by him, in the Courts of Common Pleas of Jefferson county, and acknowledge full satisfaction of all or any agreements now or heretofore in existence between them.

"In consideration of which, the said William Stewart agrees to pay the said George Stewart as follows:—One hundred dollars, lawful money, on the first day of April, A. D. 1849. One hundred dollars on the first day of April 1850. One hundred dollars first

[Stewart's Administrators *v.* Lang *et al.*]

of April 1851, and one hundred dollars per annum thereafter, till the sum shall amount to twelve hundred dollars, including the sums now mentioned, and to pay to the said George Stewart seventy-five dollars, in such produce as the said George Stewart may from time to time need, after this date, and such produce as the said William may have to spare. Witness our hands and seals the day and year aforesaid.

" In presence of     " GEORGE STEWART.    [L. S.],

   " H. BRADY.      " WILLIAM A. STEWART. [L. S.]"

At the time of making this agreement the deceased had but an equitable title in the property therein mentioned, the legal title remaining in " The Holland Land Company." No portion of the purchase-money was paid by William Stewart to his father, but after his death three or four instalments were paid to the administrators.

After this agreement, John A. Lang recovered a judgment against William A. Stewart, issued an execution, and levied upon this land. It was then sold by the sheriff to Lang, the plaintiff in the writ, to whom a deed in due form was acknowledged and delivered.

At this time there was due to the estate of George Stewart, under the above-recited agreement, the sum of $1278, which was the money sought to be recovered on the ejectment.

The plaintiffs contended that the agreement between the deceased and William A. Stewart was but an executory contract, and that therefore such an estate remained in George Stewart, as would enable him or his administrators to enforce the payment of the balance of the purchase-money by ejectment.

The court below instructed the jury that the contract was executed; that all the title had passed out of George Stewart, deceased, by the agreement; and that the verdict of the jury must be for defendant.

The jury found accordingly, and judgment having been entered upon the verdict, the plaintiffs sued out this writ.

The errors assigned were: 1. That the court below erred in instructing the jury as follows :—" But here it appears that all the title that the grantor had was parted with, and nothing to show an intention to execute further deeds."

  2. That the court below erred in instructing the jury that "It" (the sale) " was for a consideration in money, for the payment of which the personal covenant of the grantee was alone taken."

3. The court below erred in instructing the jury " that the verdict must be for the defendants."

*B. F. Lucas*, for plaintiff in error, defendant below, contended that the court below had erred in their construction of the agree-

[Stewart's Administrators v. Lang et al.]

ment, and cited Stokely v. Trout, 3 Watts 163; Williams v. Bently, 3 Casey 394; Stouffer's Lessee v. Coleman, 1 Yeates 303; Irvine et al. v. Campbell, 6 Binn. 118.

J. G. Gordon, for defendants in error, argued that the instrument in question was a present conveyance of all the estate of George Stewart, deceased: Grey v. Packer, 4 W. & S. 17; Bear v. Whistler, 7 Watts 144; and insisted that in the cases cited on the other side, the contract stipulated for a further and more formal conveyance.

The opinion of the court was delivered, October 28th 1860, by Strong, J.—In determining whether the instrument, dated January 1st 1849, was an immediate conveyance, or only an executory contract, we are to look for the intention of the parties, and this is to be sought for in every part of the contract. It contains words of present assurance ("doth and hath by these presents granted, bargained, sold, and for ever quit claim," &c.), and these words, doubtless, afford a presumption that an executed conveyance was intended. But that presumption is not conclusive. It may be overcome by the presence in the instrument of other words which contemplate a future conveyance, as it was in the case of Stokely v. Trout, 3 Watts 163, where the words of immediate grant were, "have granted, bargained, sold, aliened, enfeoffed, released, and confirmed," and where the instrument acknowledged the receipt of part of the consideration, but the vendor covenanted to "make a more complete deed of conveyance." So also in Stouffer v. Coleman, 1 Yeates 393. The same principle is laid down also in Williams v. Bently, 3 Casey 301, where it was said that "the intention is so imperative in the construction of agreements, that the strongest words of conveyance in the present tense will not pass the estate, if other parts of the instrument show that this was not .the intention of the parties. A provision in the contract for the conveyance of the title at a subsequent time, on the performance of .stipulated terms, is generally decisive that the article of agreement itself was not designed to pass the title." The presumption arising from the use of words of transfer in the present tense may also be overcome by other parts of the instrument, though there be no covenant for future conveyance. It was in Williams v. Bently, in Foster v. Foster, 1 Levinz 55, and in Ogden v. Brown, 9 Casey 247. In the last of these cases the rule was averred to be, that, "Whether an informal instrument, transferring an interest in real estate, shall be held a conveyance, or only an agreement for a conveyance, depends not on any particular words or phrases found in it, but on the intention of the parties as collected from the whole contract."

In the instrument now before us, there are several things which are inconsistent with the presumption that the parties intended it as a final disposition of the subject-matter of their contract, and which tend therefore to rebut the inference which, without them, must necessarily be drawn from the vendor's use of words of present conveyance.

It is called by the parties an agreement, a circumstance to which importance was attached in Stokely *v.* Trout, and which has been considered of some weight in other cases. In popular understanding there is a distinction between an agreement and a deed. The former is regarded as preparatory to the latter. A sale by articles of agreement, and a sale by deed, are in the common mind distinct in effect. When, therefore, the inquiry is, what the parties intended, it cannot be said to be of no consequence that they have called their contract an agreement.

It is to be observed, also, that the consideration for the action of George Stewart, the alleged grantor, seems to have been not the covenants of the vendee, but the performance of them. It was in consideration of covenants "*to be done and performed,*" and by the terms of the agreement that performance was to be prospective. If, therefore, the instrument be construed a present conveyance, it is a conveyance for no present stipulated consideration, none in hand received. This, it must be admitted, is in itself of no great importance, but is not without weight, in connection with other provisions of the agreement. In addition to these things, there are no words of inheritance in the instrument. If the parties intended it as an executed contract, then but a life estate passed to William A. Stewart, the vendee. That such an effect was the design of the parties, when by the same instrument it was agreed that twelve hundred dollars should be paid by the vendee in annual instalments, extended twelve years, and also seventy-five dollars in produce, such as the vendor might from time to time need after the date of the instrument, and such produce as the vendee might have to spare, it is difficult to believe.

But a more important thing, and one which appears to show quite satisfactorily that the agreement was not intended by the parties as a consummation of the proposed arrangement, is found in the provisions that George Stewart should withdraw and discontinue all suits in the Court of Common Pleas of Jefferson county, and acknowledge full satisfaction of all and any agreements then and theretofore in existence between the parties. These provisions are in immediate connection—in the same sentence with the words of grant. Yet they refer to something thereafter to be done by the grantor, and they show at least that the whole contract was not considered as executed by him. The same words which it is argued conveyed the land, are used to

[Stewart's Administrators *v.* Lang *et al.*]

express the obligation to discontinue the suits. If, in regard to the latter, they must be construed as prospective, why not in regard to the former? Certainly, something more than the execution of this instrument was understood to be required of the vendor. Besides, such stipulations on the part of a grantor are altogether unusual and out of place in a conveyance of lands. Even their presence there seems to show that the parties contemplated further action, a more complete arrangement.

It is also a slight circumstance, an index pointing to the intention, that the agreement was not executed in the ordinary forms of a deed. Its execution was not acknowledged, and it was attested only by a witness. It was treated by the parties as executory agreements are commonly treated, and not as an immediate conveyance of land.

Considering the whole instrument, therefore, we think it evinces that the intention of the parties was not to create an absolute and present conveyance of the land. It follows that it was only executory.

It was said in the argument, and it is stated in the paper-books, that William A. Stewart obtained the legal title from the Holland Land Company, after his agreement with his father. This does not appear upon the record, and we are not therefore at liberty to consider what may be the effect of such a conveyance. Dissenting, as we do, from the construction given by the learned judge of the court below, to the agreement of January 1st 1849, we are constrained to reverse the judgment.

Judgment reversed, and a *venire de novo* awarded.