# Lyon *versus* Gormley, Executor, &c., of Lewis.

1. The Lateral Railway Act of May 5th 1832 is intended to give the petitioner nothing more than a privilege to open, construct, complete and use a railway through the land of another.

2. The owner of the land is not divested of his right to the freehold, nor of his title to the stone, wood or mineral. The act fastens on his land a servitude, but does not disturb any right not essential to the servitude.

3. The petitioner does not acquire the ownership of materials he may displace or any more than the right of way and the right to use those materials in the construction of his way.

4. Coal having been severed from the freehold, in constructing a lateral railway, it became the property of the owner of the freehold, and trover lay against the owner of the railroad for selling it.

5. The general principle is that damages in trover are to be assessed as of the time of conversion ; in this case it was at the sale of the coal.

6. Forsyth v. Wells, 6 Wright 291, commented on.

ERROR to the Court of Common Pleas of *Allegheny county*.

This was an action of trover, to October Term 1862, by William A. Lyon against Samuel Gormley, executor, &c., of A. Kirk Lewis, to recover the value of 36,000 bushels of coal, taken and sold by the decedent, but claimed by Lyon to be his property, under the following circumstances :—

Lewis, the decedent, under the Act of May 5th 1862, Purd. 846, had constructed an underground railroad on the land of Lyon. The viewers reported on the subject of damages, that they estimated and found " that the damages that will be sustained, taking into consideration the advantages to be derived   y

[Lyon *v.* Gormley.]

the said William M. Lyon by the opening, constructing, completing and using the said underground railroad, with two tracks as aforesaid, will amount to the sum of $1100 ;" which sum was paid to Lyon.

In opening the road Lewis dug out and sold the coal, which is the subject of this suit. This occurred in 1859.

The plaintiff's points were :—

1. The proprietor of an underground lateral railroad, constructed through the lands of other parties, has no right to appropriate to his own use, and sell coal or other valuable minerals of said parties, which he may displace in opening his road.

2. The defendant's testator did not acquire title to the coal of the plaintiff, lying within the lines of the proposed lateral railroad, in virtue of the proceedings for constructing his road.

3. The coal in controversy in this case, when mined by the defendant's testator, in the opening of his road, became the personal property of the plaintiff.

\*　　\*　　\*　　\*　　\*　　\*　　\*

5. The plaintiff is entitled to recover the price which the defendant's testator received for the coal in question, and interest.

The defendant's points were :—

1. When a party, by virtue of proceedings under the Lateral Railroad Act and its supplements, constructs a railroad underground, through the coal-vein of another party, and pays all damages assessed by the viewers, he thereby acquires ownership of the coal necessarily mined by him, in making his entry through such coal-vein.

2. If he does not acquire ownership of such coal, an action of trover will not lie by the original owner of the coal, against the party constructing such railroad, to recover the value of such coal.

3. If such action would lie, it would not survive against the executor of the party.

\*　　\*　　\*　　\*　　\*　　\*　　\*

5. If the court are of opinion that the present action is properly brought, the proper measure of damages is the value of the coal in the hill, at the time when mined by the defendants.

The jury found " for the plaintiff under the instruction of the court, and subject to the opinion of the court, upon the questions of law raised by the several points propounded by counsel, and reserved by the court;

" And assess the plaintiff's damages at the sum of $171.70, in case the court shall be of opinion that the measure of damages is the value of the coal in place;

" And at the sum of $981.12, in case the court shall be of opinion that the measure of the damages is the value of the coal at the mouth of the pit."

[Lyon v. Gormley.]

The court (Stowe, A. J.) below entered judgment for the defendant *non obstante veredicto*, which was assigned for error.

*Hamilton & Acheson*, for plaintiff in error—as to the ownership of the coal—cited Act of May 5th 1832, § 1, Purd. 846, pl. 49, Pamph. L. 501, § 5, p. 847, pl. 54; Chambers *v*. Furry, 1 Yeates 167; Lewis *v*. Jones, 1 Barr 336; Angell on Highways, § 302, *et seq.*; Jackson *v*. Hathaway, 15 Johns. 447. As to the form of action: Forsyth *v*. Wells, 5 Wright 291; 1. Ch. Pl. 146, 147–48; Martin *v*. Porter, 5 M. & W. 351; Higgins *v*. Mortimer, 6 Car. & P. 616; Backenstoss *v*. Stahler, 9 Casey 251; Sanderson *v*. Haverstick, 8 Barr 294; Kier *v*. Peterson, 5 Wright 359; Act of February 24th 1834, § 28, Purd. 286, pl. 90, Pamph. L. 77. As to the measure of damages: Martin *v*. Porter, 5 M. & W. 351; Wild *v*. Holt, 9 Id. 671; Salmon *v*. Horwitz, 28 E. L. & Eq. 175.

*Burgwin*, for defendant in error.

The opinion of the court was delivered, January 7th 1867, by

STRONG, J.—Our opinion is, that the Lateral Railway Act of May 5th 1832 was intended to give the petitioner nothing more than a privilege to open, construct, complete and use a railway through the lands of another. The owner of the land is not divested of his right to the freehold, nor of his title to the stone, wood or minerals. The act fastens upon his land a servitude; but it does not disturb any right or ownership not essential to that servitude. Under the general railroad law, and in most of our railroad charters, provision is made only for the acquisition of a right of way, as also in the Acts of Assembly respecting ordinary highways. The proprietor of the land retains his exclusive right to all its mines, quarries, springs of water, timber and earth for every purpose not incompatible with the right of way. This is the almost universal rule, where a sovereign imposes a public right of way upon the land of an individual: Jackson *v*. Hathaway, 15 Johns. 447; Sanderson *v*. Haverstick, 8 Barr 294. And there is nothing in the lateral railway acts that applies a different rule. The provision made for the assessment of damages shows, that it is not contemplated that the petitioner shall acquire the ownership of the materials which he may excavate, or anything more than a right of way, and a right to use those materials in the construction of his way so far as they may be needed. The viewers are required to report " what damages will be sustained by the owner or owners of the land," through which it is proposed to build the road, " by the opening, constructing, completing and using the said railroad ;" and it is made their duty " to take into

consideration the advantages which may be derived" (*i. e.*, from the construction, opening, completion and use of the road) "by the owner or owners of the land." This report is always to be made before the construction of the railway can be commenced. In an underground railway, such as was constructed in this case, it is impossible for the viewers to know what may be excavated, and if what is taken out belongs to the petitioner for the road, it is impossible to estimate the damages of the owner of the land. An underground railroad may pass through an iron-ore bed, or a coal-mine, or even a gold-mine. Moreover, it is not necessary to his right of way, that the petitioner should become the owner of the minerals or stone he may find it necessary to excavate, and it is not to be supposed the legislature intended to interfere with the rights of property of the landowner, any farther than was needful to accomplish the object they had in view. There are also provisions of the Act of 1832, other than those which relate to the assessment of damages, tending to show that the petitioner for the road acquires no ownership of the timber, earth, stone or minerals which he may displace.

The 3d section expressly enacts to what his ownership shall extend. It declares that the right of property in *the said railroad* shall be vested in him; not the right of property in all minerals he may find in the designated route of his road and rightly sever from connection with the freehold. So it may be inferred from the requisition of the 6th section, that a statement and account of the expenses incurred in the formation and completion of the road, shall be filed in the Court of Common Pleas within three months after it shall be completed and put in use, to the end that the Commonwealth may take it on paying the money expended; that it was not contemplated the expense might be defrayed by a sale of anything taken from the land.

Besides these considerations, the 5th section, it may be remarked, is very significant. It enacts, that he or they who shall construct the railroad, after having paid the damages ascertained in the mode provided, shall be *entitled to use and apply all the gravel, timber and other materials on the route adopted, and within the breadth of twenty feet, to and for the completion of the road and bridges. Why this provision, if the petitioner becomes the owner of the material taken out by him ? Yet even this does not recognise in him any absolute ownership. It simply authorizes a particular use. Can it be that while he has but a partial right to that portion of the material which he may use for the construction of the road, he has absolute ownership of that which he does not thus use ? Before this can be held, a warrant for it should be found in clear legislative language. We think, therefore, the court below erred in ruling, that, by the assessment and

payment of damages, the ownership of the coal taken out by the defendant's testator on the line of the railroad, and not used in the completion of the road, became vested in him.

We think, also, that an action of trover was properly brought. The coal had been lawfully severed from the freehold. It thus became personal property, and immediately on its severance the right of property and of possession was in the plaintiff. The subsequent sale by the defendant's testator was a conversion, and in that consisted the wrong.

The only remaining question is, what is the true measure of damages ? In regard to this there would be no doubt were it not for Forsyth v. Wells, 5 Wright 291. The general principle undoubtedly is, that the damages are to be assessed as of the time of conversion. In this case the conversion was at the time of the sale of the coal. In Forsyth v. Wells, it appeared that the defendant who had a coal drift and mine upon his own land, had, by mistake, worked over upon the land of the plaintiff, and had taken out therefrom coal which he had converted to his own use. Two questions were raised, one of which was whether trover would lie ? and the other was, what was the measure of damages ? It was held by this court, that the true measure of damages was the fair value of the coal in place, with other such damage to the land as the mining may have caused. The decision was made by a bare majority of the court, and it is to be regarded as ruling nothing more than the law as applicable to the circumstances of that case. Then the coal had been taken under a mistake of right, and the act complained of was substantially a·trespass. It was a case for compensation, and though it was held trover would lie, the action was treated as an action of trespass *quare clausum fregit* for an injury, not wanton. Thus the damage to the land caused by mining was reckoned as a constituent, in addition to the value of the coal in place. In fact, it was impossible to distinguish, the conversion of the coal from the trespass upon the land ; but in the case now before us the facts are widely different. The excavation of the coal and its removal from the land of the plaintiff were not acts of trespass. They were authorized by law. There is, therefore, no connection between the wrong done by the defendant and the severance of the coal from the freehold. Even in actions of trespass, it has been held that the plaintiff is entitled to recover the value of coals taken from his land, at the time when they first existed as chattels, and that the defendant is not entitled to a deduction for the expense of getting them: Martin v. Porter, 5 M. & W. 351 ; Wild v. Holt, 9 Id. 672 ; see also Morgan v. Powell, 3 Ad. & E. N. S. 278. These are cases where the excavation and the carrying away were one continuous act. Much more is the plaintiff in this case entitled to recover the

[Lyon *v.* Gormley.]

value of the coal, as a chattel estimated as of the time of conversion.

Judgment reversed, and judgment for the plaintiff for $981.12, with interest from January 16th 1866.