# Lawrence and Others' Appeal.

1. A railroad company constructed their road without legal proceedings to appropriate the land on which it was located and without objection by the owners. Afterwards proceedings to assess damages were commenced; they were compromised and released. *Held*, that the title of the company was not through this proceeding, but by the original occupation without objection by the owners.

2. The release did not operate as an original conveyance, but as a discharge of the damages for the entry and occupation.

3. After the construction of the road, but before the release, the tract on which it was located was leased to the defendants. *Held* that they took it subject to the right of way of the company over the surface.

June 1st 1875. At Harrisburg. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD JJ.

Appeal from the Court of Common Pleas of *Schuylkill county*: In Equity: Of January Term 1874, No. 322.

The bill in this case was filed May 9th 1872, by the Philadelphia and Reading Railroad Company against Jacob S. Lawrence and others, partners as Lawrence, Merkle & Co., lessees, and divers other persons, owners of the land referred to in the bill.

The bill set forth that the Mahanoy and Broad Mountain Railroad Company, chartered under the General Railroad Law of

[Lawrence and Others' Appeal.]

February 19th 1849, completed their railroad in the year 1860, including an inclined plane, known as the "Mahanoy Plane," extending from the top of Broad mountain 2800 feet down the slope of the mountain to its foot; the plane was constructed at great expense, and was the main outlet to market of the coal in Mahanoy valley, more than 1,000,000 tons of coal per year being carried over it to market; that it was located on land of William Rohrer and others, named in the bill as owners, and that the land was partly underlaid by certain veins of coal, one of which was the Mammoth vein, whose outcrop crossed under the plane; that the company acquired the right over the land for the plane, under proceedings commenced in the Court of Common Pleas of Schuylkill county to December Term 1862, and release dated November 2d 1868; that under certain Acts of Assembly named in the bill, the last of which was approved February 18th 1871, all the rights of this and other companies theretofore consolidated, became vested in the plaintiffs; that after the entry of the plaintiffs on the land occupied by the plane, Lawrence, Merkle & Company leased the Mammoth vein, including that part underlying the plane, and erected the Lawrence colliery; that said firm were mining coal in said vein, lying under and keeping up the plane, in places specified in the bill, and should it be mined out, the plane would be thrown down, the plaintiffs prevented from using it, and the region depending upon it be deprived of an outlet for its coal; that they had notified the firm to cease; they paid no attention to the notice, but continued to mine coal, and threatened to open other breasts, mine coal from them and to undermine, let down and destroy the plane.

The prayers were to restrain the firm from mining, &c., any coal in the places mentioned in the bill, or interfering with the breasts or with any of the Mammoth vein coal, &c., where their gangway would pass under the plane; and for general relief.

Affidavits were filed and a special injunction was awarded.

Lawrence, Merkle & Co. answered, admitting many of the averments, amongst others that the Mahanoy and Broad Mountain Company in 1860, as averred in the bill completed the Mahanoy Plane, which was one of the main outlets for coal mined in the Mahanoy valley, and that it was over lands of William Rohrer and others, as stated in the bill. They denied that the company acquired the right of way under proceedings in the Court of Common Pleas of Schuylkill county, or that they acquired any title to the right of way against the possession of the respondents by virtue of the release of November 2d 1868, and averred that such possession and its extent were known to the railroad company; that on the 1st of January 1868 the owners of the land over which the plane was located, leased to Lawrence, Merkle & Co. for fifteen years the exclusive right to dig, &c., coal, and the exclusive possession of a body of land which includes the part on which the Mahanoy Plane

in located, and they immediately took possession of the leased premises, commenced to open the Mammoth vein, erect improvements, &c., of which the Mahanoy and Broad Mountain Company had notice before they took the release. The respondents admitted that they took possession of the demised premises after the occupation of part of them by the Mahanoy and Broad Mountain Company for their plane, but denied that their occupation was unlawful; and they averred that there was no reservation in the demise to the respondents, of any part of the land within the boundaries of the demised premises; they admitted that they were mining and driving a gangway toward the plane with the intention of taking away all the coal except that immediately under the roadway of the plane, and claiming the right to mine, &c., all the coal in the Mammoth vein.

A replication was filed and an examiner appointed, who took testimony, but no master was appointed. Proceedings were commenced on the 17th of November 1862, to have damages assessed for the owners of the land by reason of its occupancy for the railroad; the viewers appointed reported February 3d 1863, that they had assessed the damages at $570, but inasmuch as there was dispute about the ownership of the land, they were unable to report to whom the damages were to be paid, but suggusted that they be paid into court to await the determination of the question of the title.

On the 2d of March 1863, John Gilbert and others of the owners appealed. On the 18th of January 1869, it appearing to the court that the title to the land had been finally settled in favor of Gilbert and others, and that none of the other parties defendants had any claim to the land or the award of $570, the court ordered that the proceedings to assess damages should be discontinued, and satisfaction entered on the award of the viewers, upon said parties filing an agreement to that effect; the agreement was filed and satisfaction entered the same day.

The release referred to in the bill, recited that the Mahanoy and Broad Mountain Railroad Co. had fixed, &c., the route for their main line, the Mahanoy city branch, &c., to the colliery of Lawrence, Merkle & Co., through and upon lands of John Gilbert and others, naming them, and occupied or intended to occupy for the main line, land thirty feet wide on each side of the centre line of their road, &c., and in consideration of the advantage to be derived to them from the location and construction of the road, Gilbert and others, the owners of the land, released the railroad company from all claims, damages, &c., by reason of their entering upon and taking the land and the location and construction of their railroad, and covenanted that no non-user of the land appropriated and no occupation by the releasors by residence or otherwise for

any period of time, should affect the right of the railroad company to the entire and exclusive possession of the same.

The other testimony related principally to the questions of the mining of respondents with reference to the railroad, and the danger to it by continuing the mining.

The court (Walker, A. J.) on the 5th of January 1874, decreed that the defendants be perpetually restrained from mining, taking out, or in any manner interfering with the coal now remaining in the top breasts laid down in a draft, &c., being under the plane, beginning, &c.

The defendants appealed to the Supreme Court and assigned the decree for error.

*L. Bartholomew* and *E. O. Parry* (with whom was *C. N. Bumm*), for appellants.—The company did not proceed to condemn in accordance with the Act of Assembly and therefore required no title under the right of eminent domain ; they were trespassers against the owners of the land and those in possession under them : Jarden *v.* Railroad Co., 3 Whart. 502 ; Brown *v.* Powell, 1 Casey 229 ; Western Railroad Co. *v.* Johnston, 9 P. F. Smith 290 ; McClinton *v.* Pittsburg, F. W. & C. Railroad Co., 16 Id. 404. The discontinued proceeding could not deprive the owner of his title to the land, and any right the company had under the release was subject to the superior rights of the defendants previously acquired under their lease. The company could not deprive the owner of his property under the right of eminent domain before compensation be paid or secured : Bonaparte *v.* Camden & Amboy Railroad Co., Baldwin 206 ; Turnpike *v.* Brosi, 10 Harris 29.

*J. Ellis* and *J. E. Gowen*, for appellees.—If the landholders stood by and permitted the company to make improvements, they would be estopped : Big Mountain Improvement Co.'s Appeal, 4 P. F. Smith 361. Owners may waive previous payment of damages : McCauley *v.* West Vermont Railroad Co., 33 Verm. 311 ; Washburne on Easements 24 ; W. Penna. Railroad Co. *v.* Johnston, 9 P. F. Smith 290. By the appeal from the assessment of damages the owners affirmed the company's title to right of way, and waived any preceding irregularity : Delaware, L. & W. Railroad Co. *v.* Burson, 11 P. F. Smith 369 ; Lentz *v.* Stroh, 6 S. & R. 34 ; Cunningham *v.* McCue, 7 Casey 469 ; Woodring *v.* Forks Township, 4 Id. 362 ; Weidner *v.* Matthews, 1 Jones 340 ; Cameron *v.* Montgomery, 13 S. & R. 128 ; Zeigler *v.* Fowler, 3 Id. 238. The long acquiescence of the landholders waived any condition preceding the appeal : Mayes *v.* Jacoby, 8 S. & R. 526 ; Beideman *v.* Vanderslice, 2 Rawle 334. The owners could not take chance for the damages, and, if unsatisfactory, claim the land : Wadhams *v.* Lackawanna & B. Railroad Co., 6 Wright 303. After

[Lawrence and Others' Appeal.]

the appeal, the legal appropriation is presumed: McClinton v. Railroad Co., 16 P. F. Smith 404. The release created no estate; it was merely a relinquishment of damages: Dobbins v. Brown, 2 Jones 75; Groh v. Eckert, 3 Brewster 118. Lawrence, Merkle & Co. were not owners when the plane was constructed, and could not be entitled to damages: Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 421. The compensation is to be estimated to the time when the injury was committed: Zimmerman v. Union Canal Co., 1 W. & S. 354. Damages will not pass with a conveyance of land, and under a conveyance Lawrence, Merkle & Co. would have no standing: Schuyl. & S. Co. v. Decker, 2 Watts 343; Commonwealth v. Shepard, 3 Penna. R. 509; Mann's Appeal, 6 Harris 253; Boynton v. Railway Co., 4 Cushing 467. If they had any claim they should have applied for viewers: Dyer v. Wightman, 16 P. F. Smith 427; N. Penna. Railroad Co. v. Davis, 2 Casey 238.

Judgment was entered in the Supreme Court, June 8th 1875,

PER CURIAM.—We find no error in this decree. The railroad company had actually appropriated the land, and built and used its railway long before any title by lease of the coal mines had vested in the defendants. This is admitted in the answer. The owner of the land made no objection to this appropriation, but after a proceeding to assess the damages had been prosecuted, finally compromised and released. The title of the railroad company came not through this proceeding, but by its original entry and appropriation without objection. The release operated not by way of an original conveyance, but by way of a discharge for the damages incurred by the entry and construction of the railway. It is clear therefore that when the defendants obtained their lease they took it subject to the previous easement and right of way of the railroad company over the surface. The railroad was then in lawful existence and use. The owners made no defence to the right of the railroad company to appropriate the land, and their tenants cannot now set up a defence which they waived, if they had any. The Act of 1849 does not compel a railroad company to remove its track, though it gives the authority. A most necessary provision for the security of the company and of the public. To hold the law to be mandatory would result in its being compelled to shift the location, involving perhaps an extensive change of gradients, as often as the mine owner honeycombs the earth beneath the railway.

Decree affirmed with costs and appeal dismissed.