Newman & Co., Inc., : 
                Appellant : 
                 : 
                 : 
        v. : 
                 : 
                 :   No. 536 C.D. 2020 
City of Philadelphia :   Argued: March 15, 2021

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
              HONORABLE ANNE E. COVEY, Judge (P.)
              HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE COVEY                           FILED: April 8, 2021

Newman & Co., Inc. (Newman) appeals from the Philadelphia County Common Pleas Court's (trial court) April 12, 2019 order finding in favor of the City of Philadelphia (City) and dismissing Newman's Amended Complaint (Amended Complaint); and the trial court's March 6, 2020 order denying Newman's motion for post-trial relief (Post-Trial Motion).[1] Newman presents two issues for this Court's review: (1) whether the trial court erred as a matter of law or abused its discretion in deciding that Newman was not the fee simple owner of a 30-foot-wide strip of land

---

[1]     Technically, an '[a]ppeal lies from the judgment entered and not the denial of post-trial motions,' [*Crosby v. Dep't of Transp.*, 548 A.2d 281, 283 (Pa. Super. 1988)], and a 'verdict [does] not become final for purposes of appeal until properly reduced to and entered as a formal judgment under [Pennsylvania Rule of Civil Procedure] [No.] 227.4.' *Crystal Lake Camps v. Alford*, 923 A.2d 482, 488 (Pa. Super. 2007).

*Mitchell v. Milburn*, 199 A.3d 501, 504 n.3 (Pa. Cmwlth. 2018). Here, judgment was entered on March 6, 2020, and docketed on March 10, 2020.

in northeast Philadelphia extending from Comly Street to Devereaux Street near the Delaware River abutting Newman's real estate (on both the riverfront and land-locked properties) and through which the former Kensington and Tacony Railroad (K&T) ran (Disputed Strip); and (2) whether the trial court erred as a matter of law or abused its discretion in holding that Newman was not entitled to an easement over the Disputed Strip, and by not providing Newman with the opportunity to present further evidence on the easement issue despite expressly stating that Newman would be given such an opportunity. After review, we affirm.

## Background

Newman owns several parcels of land in the vicinity of 6101 Tacony Street adjacent to the Delaware River. The Disputed Strip is a narrow strip of land which was formerly railroad owned and constituted a right-of-way for a railroad line. It is close to the shoreline and bounded on each side by property owned by Newman. There is a railroad track on the Disputed Strip. The railroad owner, Consolidated Rail Corporation (Conrail), ceased rail service along this line in 1983, and sold the property to the City in 2005. The City is building a walking trail along the Disputed Strip as part of its "Rails-to-Trails" program. Newman owns property on either side of the trail.

K&T acquired the property, which includes the Disputed Strip, through two deeds. By deed dated August 25, 1887 (Baldwin Deed), The Baldwin Homestead Association of Wissinoming (Baldwin Association) conveyed to K&T an interest in a 30-foot-wide strip of land covering 0.965 acres between Dark Run Lane to the southwest, and the Wissinoming Creek to the northeast, along the Delaware River (Baldwin Strip). By deed dated January 8, 1891 (Porter Deed), Charles A. Porter and Rosette M., his wife, John L. Hill and Jennie H., his wife, and Hamilton Disston and Elizabeth E., his wife (collectively, Porter and others)

2

conveyed to K&T an interest in a 2.882-acre tract extending from Robbins Street to the Wissinoming Creek (the Porter Tract), which included a 30-foot-wide strip of land (Porter Strip).

Conrail was a successor to K&T. By November 20, 1981 application, Conrail requested permission from the Interstate Commerce Commission (ICC) to abandon rail service on 1.9 miles of its rail line between Frankford Creek (milepost 3.7) and the Delaware Expressway (milepost 5.6) in Philadelphia County, as well as, 2.1 miles of its rail line between Venango Street (milepost 1.6) and Frankford Creek (milepost 3.7) in Philadelphia County, land which covers part of the Disputed Strip. On February 23, 1982, the ICC authorized Conrail to abandon service on the rail line. By March 22, 2006 quitclaim deed (2006 Deed), Conrail conveyed to the City various pieces of property underlying the former K&T railroad, including the Disputed Strip.

Newman is the record owner of several parcels of real estate abutting the Disputed Strip of the former K&T railroad line, by deeds which the parties refer to as the Original Newman Parcel Deed, the Devereaux Deed, the Tacony Deed, and the Comly Deeds 1-3. The Original Newman Parcel Deed, the Devereaux Deed, Comly Deed 1, Comly Deed 2 and Comly Deed 3 all reference the Disputed Strip as the boundary lines of the landlocked parcels and the riverfront parcels abutting the Delaware River. None of these deeds included the Disputed Strip within their metes and bounds descriptions of the parcels conveyed. One of Newman's predecessors-in-interest previously owned the land east of the Wissinoming Creek and south of the Disputed Strip before conveying an eastern portion of that property to the Wissinoming Yacht Club (Wissinoming Yacht Club Deed).

With the exception of the parcel owned by the Wissinoming Yacht Club, Newman's real estate, taken together, abuts the Disputed Strip on both sides (on the riverfront side and the land-locked side). The terms of the Original Newman

3

Parcel Deed, the Devereaux Deed, the Tacony Deed, Comly Deed 1, Comly Deed 2 and Comly Deed 3 do not expressly reserve in the grantors[2] any fee simple or a reversionary interest in the Disputed Strip. A portion of one of the parcels conveyed by James D. Morrissey, Inc. (Morrissey) to Newman along Devereaux Street, north of the Disputed Strip and east of the Wissinoming Creek, had at one point been owned by the Connecting Railway. Newman's real estate south of the Disputed Strip (along the water) or west of the Wissinoming Creek was not previously owned by Conrail, the Connecting Railway, or K&T.

Both the Baldwin Deed and the Porter Deed state that the subject property was being conveyed to K&T in fee. Neither the Baldwin Deed nor the Porter Deed contain any reversionary interest in the Disputed Strip. The 2006 Deed quitclaimed all rights to the property owned by Conrail to the City. None of the deeds by which the City acquired title to the Disputed Strip refer to easements in favor of any party. None of the deeds by which Newman acquired its abutting parcels purported to convey any easement or ownership of the Disputed Strip.

## Facts

On July 6, 2016, Newman filed a Complaint against the City seeking to establish an ownership interest in the Disputed Strip. The Complaint contains several counts in which it seeks to quiet title to the property in Newman's name, enjoin the City from building on said property, obtain declaratory relief, recover damages for trespass, and eject the City. As an alternative to fee simple ownership, Newman seeks easement rights in the Disputed Strip. On July 14, 2016, Newman filed an Emergency Motion for Preliminary Injunction (Emergency Motion). On July 21, 2016, Newman withdrew its Emergency Motion. On September 26, 2016,

---

[2] The grantors were Florence T. Fitzmyer, James D. Morrissey, Inc., N.W. Bachr et al., C. William Kieser, Powers Truck Service, Inc., and William Kieser.

4

Newman filed a Motion for Summary Judgment (Summary Judgment Motion), which the trial court denied on December 9, 2016. On January 4, 2017, Newman filed a Motion for Reconsideration of the trial court's December 9, 2016 order (Reconsideration Motion). On January 11, 2017, Newman appealed from the trial court's December 9, 2016 order to the Pennsylvania Superior Court, which Newman later withdrew on February 27, 2017.

On December 8, 2017, Newman filed the Amended Complaint with the trial court.[3] On May 7, 2018, both the City and Newman filed Motions for Summary Judgment which the trial court denied on July 2, 2018. The trial court conducted a non-jury trial on January 14 and 15, 2019. On April 12, 2019, the trial court found in favor of the City and dismissed Newman's Amended Complaint. On April 22, 2019, Newman filed the Post-Trial Motion seeking a new trial.[4] On March 6, 2020, the trial court denied the Post-Trial Motion and entered judgment in favor of the City. On April 2, 2020, Newman appealed to this Court.[5]

---

[3] On December 7, 2017, the parties stipulated to Newman filing an Amended Complaint.

[4] On May 10, 2019, Newman appealed from the trial court's verdict to the Pennsylvania Superior Court. On June 19, 2019, the trial court dismissed Newman's post-trial motions due to the filing of the appeal. On July 23, 2019, the trial court ordered Newman to file a Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On August 13, 2019, Newman filed its Rule 1925(b) Statement. On September 6, 2019, the trial court filed its opinion. On October 29, 2019, the Superior Court quashed the appeal as premature. On November 6, 2019, the original record was transmitted to this Court. By November 26, 2019 Order, this Court granted the City's Motion for Remand and remanded the matter to the trial court for disposition of the Post-Trial Motion.

[5] Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

Newman first argues that the trial court erred as a matter of law or abused its discretion in deciding that Newman was not the fee simple owner of the Disputed Strip. Specifically, Newman contends that, since the Disputed Strip was used as a public road or highway, as a railroad, for public conveyance for over a half-century by the City's predecessors-in-interest, K&T created an easement in the Disputed Strip, which easement terminated when Conrail's use of the public road, i.e., the railroad, ended. The City rejoins that the central issue in this case is whether the Baldwin and Porter Deeds conveyed the Disputed Strip to K&T in fee simple, so that its successor, Conrail, was able to convey the Disputed Strip to the City in fee simple. The City maintains that the normal principles of deed interpretation govern this issue, and that the relevant deeds conveyed a fee simple interest because they contain no terms indicating that a mere easement was intended.

Initially,

> [w]hen construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used.

---

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664-65 (Pa. Super. 2014) (quoting *Wyatt, Inc. v. Citizens Bank of Pa.*, 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted)). "[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review . . . is whether the trial court abused its discretion." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000).

6

*Pa. Game Comm'n v. Seneca Res. Corp.*, 84 A.3d 1098, 1105 (Pa. Cmwlth. 2014) (quoting *Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa. Super. 2005) (citations omitted)).

> The Pennsylvania Supreme Court has long held:
>
> It is well settled that a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the center line of such highway or easement. A railroad is a highway within the meaning of this rule. If [a] [r]ailway [c]ompany acquired by its [] deed merely a right-of-way or an easement[,] an abandonment by the railroad of its right-of-way would, in legal effect, [] extinguish this encumbrance upon the land[.]

*Fleck v. Universal-Cyclops Steel Corp.*, 156 A.2d 832, 834 (Pa. 1959). Further, "[i]t was recognized early in this Commonwealth that a conveyance or a taking by eminent domain of a right-of-way usually conveys or creates only an easement." *Id*. Moreover, "if and where the granting clause and the habendum clause of a deed are inconsistent, conflicting or repugnant, the granting clause must prevail." *Id*. It is with these legal principles in mind that this Court examines the deeds at issue herein.

The Baldwin Deed provides, in relevant part:[6]

> **This Indenture** made the [25th] day of August in the year of our Lord [1887], Between [the Baldwin Association] of the one part and [K&T] of the other part Witnesseth that the said [Baldwin Association] for and in consideration of the sum of <u>Four Thousand Dollars</u>[7] lawful money of the United States of America unto them and (*illegible 2 words*[)] by the said [K&T] of and before the sealing of these presents the receipt whereof is hereby acknowledged

---

[6] The original Baldwin Deed is handwritten, *see* Reproduced Record (R.R.) at 541a-544a; the quoted provisions are a "Transcription of [the] 1887 [Baldwin] Deed." R.R. at 545a.

[7] Notwithstanding, the recording clause provides: "[T]he within Indenture of the within named [K&T] the sum of Three Thousand Dollars being the full consideration money within mentioned[.]" R.R. at 546a.

**has granted, bargained, sold[,] aliened[,]**[8] **enfeoffed,**[9] **released, and confirmed and those present Do grant[,] bargain[,] sell[,] alien[,] en[f]eoff[,] release and confirm unto the said [K&T] their successor and assigns**[.]

**All that certain strip or piece of land** situate in the Twenty-Third Ward of the City . . . in the State of Pennsylvania, bounded and described as follows viz . . . .

Together with all and the singular Improvements, Ways[,] Waters[,] Water courses[,] Rights[,] Liberties[,] Privileges[,] Hereditaments[10] and Appurtenances whatsoever of their [Baldwin Association] in law equity or otherwise howsoever of in and to the same and envy put thereof **To have and to hold the said strip or piece of land** hereinbefore described Hereditaments and Premises hereby granted or mentioned and intended so to be the appurtenances unto the said [K&T] their successors and assigns **for the proper use and behalf of the said [K&T] their successors and assigns to and for the proper use and behalf of the said [K&T] their successors and assigns forever**[.]

It being understood and agreed by and between the parties hereto that the said [K&T] their successors and assigns shall and will at their own proper expense construct and maintain good and substantial fences on the lines between the land hereby granted and the remaining land of the said [Baldwin Association] adjoin the same and that the said [K&T] shall and will fill in to the level of the bulkhead now erected on the land of the said [Baldwin Association] the strip of land lying between the land hereby being granted and the said bulkhead And the said [Baldwin Association] for themselves and their successors Do by here presents covenant grant and agree to and with the said

---

[8] Black's Law Dictionary defines "alienate," in relevant part, as "to transfer or convey (property or a property right) to another." *Alienate*, Black's Law Dictionary (11th ed. 2019).

[9] Black's Law Dictionary defines "enfeoff," in relevant part, as "to put (a person) in legal possession of a freehold interest[.]" *Enfeoff*, Black's Law Dictionary (11th ed. 2019). "Freehold" is defined as "an estate in land held in fee simple, in fee tail, or for term of life[.]" *Freehold*, Black's Law Dictionary (11th ed. 2019).

[10] "Hereditament" means "[a]ny property that can be inherited; anything that passes by intestacy. [] Real property; land." *Hereditament*, Black's Law Dictionary (11th ed. 2019).

8

[K&T] their successors and assigns that the said [Baldwin Association] and their successors all and singular the Her[e]d[ita]ments and premises herein above described and granted or mentioned and intended so as to be with the appurtenances unto the said [K&T] their successors and assigns against them the said [Baldwin Association] and their successors and against all and every Person or Persons whomsoever lawfully claiming or to claim the same or any part thereof By from or under them or any of them shall Warrant and forever Defend in Witness Whereof The said [Baldwin Association] has caused their Corporate seal to be hereunto affixed duly attested the day and year final hereinbefore written.

Reproduced Record (R.R.) at 545a-546a (bold emphasis added)

The Porter Deed states, in pertinent part:[11]

**This Indenture** made the [8th] day of January in the year of our Lord [1891] between [Porter and others], all of the City . . . and State of Pennsylvania, of the one part, and [K&T], of the other part, witnesseth that the said [Porter and others] for and in consideration of the sum of <u>seventeen thousand four hundred and ten dollars</u> lawful money of the United States of America unto them well and truly paid by the said [K&T] at and before the sealing and delivery of these presents, the Receipt whereof is hereby acknowledged, **have granted**, **bargained**, **sold**, **alienated**, (illegible), **released**, **and confirmed**, **and by those presents do grant**, **bargain**, **sell**, **alienate**, (illegible), **release and confirm unto the said** [**K&T**], **their successors and assigns**,

<u>**All That Certain**</u> **lot or piece of land**, situate in the thirty fifth (illegible) Third Ward of the said City . . . bounded and described as follows viz . . . .

Together with the Buildings and Improvements thereon erected Being part of a certain large tract and piece of land which Peter E. Costello and Annie I., his wife, by Indenture [b]earing the date the [7th] day of July, A.D.,

---

[11] The original Porter Deed is handwritten, *see* R.R. at 552a-555a; the quoted provisions are a "Transcription of [the] 1891 [Porter] Deed." R.R. at 556a.

1890 and recorded at Philadelphia in deed Book G.G.P. No. 684 page (illegible) granted and conveyed, inter alia, unto the said [Porter and others], in fee together with all and singular the Buildings, Improvements, ways, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging or in any wire appertaining, and the reversions and Remainders, Rents, Issues and Profits thereto, and all the estate, Right, title, interest, property, claim and demand whatsoever of the said [Porter and others], in law equity, or otherwise howsoever, of, in, and to the same and every part thereof.

**Reserving unto the said** [**Porter and others**], their heirs and assigns, owners of the remaining portion of said large tract of land, **the right to lay water**, **gas**, **and drainage pipe and construct sewers under the surface of the said strip of land to the Delaware River within the lines of any streets that may hereafter be opened across said strip of land** to have and to hold the said lot or piece of land with the buildings and Improvements thereon erected hereinbefore described hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances **Excepting as aforesaid unto the said** [**K&T**], **their successors and assigns**, **to and for the only proper use and behoof of the said** [**K&T**], **their successors and assigns forever**.

**It being understood and agreed** by and between the parties hereto that the said [**K&T**] **shall and will construct planked road crossings at the intersections of their Railroad with the said streets as they shall be opened and shall also during the progress of any construction work provide temporary crossing for the use of the said** [**Porter and others**], for themselves respectively and their respective Heirs, Executors, and administrators do by these presents covenant, grant and agree to and with the said [K&T], their successors and assigns (illegible) they the said [Porter and others], their effective [sic] heirs, all and singular, the [hereditaments] and premises herein above[-]described and granted or mentioned and intended so to be, with the appurtenances, unto the said [K&T], their successors and assigns, against them the said [Porter and others] and their respective heirs and against all and every other person or persons whomsoever from lawfully claiming or to claim the same

10

or any part thereof, by, from or under them or any of them shall and will warrant said forever defend.

R.R. at 556a-557a (bold emphasis added).

In the seminal case, *Brookbank v. Benedum Trees Oil Co.*, 131 A.2d 103 (Pa. 1957), the Pennsylvania Supreme Court explained that "[a]n examination of [the] agreement in its entirety, including all its language," is required to determine whether the parties intended to convey a fee or a right-of-way to a railroad. *Id*. at 111. The *Brookbank* Court considered the following factors in making its determination: (1) the amount of consideration paid; (2) the operative words of conveyance and whether they are past or present tense; (3) the reference to a strip of land, a parcel or tract of land, as opposed to a right; (4) the inclusion or omission of habendum,[12] tenendum,[13] and/or warranty clauses; and (5) the rights given or retained.

The *Brookbank* Court held, concerning the $300.00 consideration , that in the absence of any evidence of the value of the strip of land in 1903, a finding that the consideration was inadequate for conveyance of a fee simple title would be based on conjecture and surmise. The *Brookbank* Court declared that, since the words grant, bargain, etc., were used in the past tense rather than the present tense, they did not, standing alone, compel an interpretation that a fee was intended to be conveyed. That Court stated:

> It is true that in other jurisdictions a judicial 'yardstick' has been established by the application of which conveyances to railroads granting or conveying a strip, parcel or tract of land are held to pass a fee simple title whereas conveyances which grant or convey a 'right' are held to pass only a limited estate.

---

[12] The habendum clause defines the type of interests and rights to be conveyed to the grantee.

[13] The tenendum clause is the clause wherein the tenure of the land is defined and limited.

11

*Id*. at 110. "However, this 'yardstick' is only applied in the absence of additional language cutting down or limiting, directly or indirectly, the estate conveyed, and is only applicable in this case as *one* of the factors to be considered in attempting to determine the parties' intent." *Id*. With respect to the omission of the habendum, tenendum and warranty clauses, the *Brookbank* Court opined: "It seems inconceivable that the railroad would have omitted these clauses from an instrument of conveyance under whose terms they [sic] intended to receive a fee simple estate." *Id*. Regarding the specific rights given to the railroad, such as the right of entry, the right to use, construct, maintain and operate a railroad, and the right to use earth, stones and gravel to grade and fill the roadbed, the *Brookbank* Court expounded: "The only rational conclusion from this language is that the parties did not intend to vest in the railroad any interest in fee simple; any other construction does violence to the expressed grant of these rights to the railroad." *Id*.

Finally, the *Brookbank* Court declared:

> The landowner further release[d] the railroad from any liability arising from the location, construction and operation of the railroad. If the railroad were given under this instrument a fee interest in this land[,] the railroad would have a complete right to locate, construct and operate a railroad over the land. The only situation where any liability might accrue to the railroad from the location, construction and operation over this land would be in the event the railroad secured simply a 'right[-]of[-]way' over the land.

*Id*. The *Brookbank* Court concluded: "An examination of this agreement in its entirety, including all its language, convinces us that the parties did not intend the conveyance of a fee." *Id*. at 111.

Here, in contrast to the facts in the *Brookbank* case, the consideration given in the Baldwin Deed and the Porter Deed was $4,000.00 and $17,000.00, respectively, as opposed to nominal amounts. The words grant, bargain, sell and

12

alienate are used in both the past and present tense in the Baldwin Deed ("has granted, bargained, sold[,] aliened[,] enfeoffed, released, and confirmed and those present **Do grant**[,] **bargain**[,] **sell**[,] **alien**[,] **en[f]eoff**[,] **release and confirm** unto the said [K&T] their successor and assigns"),[14] and the Porter Deed ("have granted, bargained, sold, alienated, (illegible), released, and confirmed, and by those presents **do grant**, **bargain**, **sell**, **alienate**, (illegible), **release and confirm** unto the said [K&T], their successors and assigns"),[15] thereby reflecting both rights had, and rights conveyed.  The Baldwin Deed conveys "[a]ll that certain **strip or piece of land**,"[16] and the Porter deed conveys "All That Certain **lot or piece of land**[;]"[17] as opposed to a right-of-way.  All of the above indicate that a fee simple was conveyed rather than a right-of-way.

> Further, the Baldwin Deed contained the following:

> It being understood and agreed by and between the parties hereto that the said [K&T] their successors and assigns shall and will at their own proper expense construct and maintain good and substantial fences on the lines between the land hereby granted and the remaining land of the said [Baldwin Association] adjoin the same and that the said [K&T] shall and will fill in to the level of the bulkhead now erected on the land of the said [Baldwin Association] the strip of land lying between the land hereby being granted and the said bulkhead And the said [Baldwin Association] for themselves and their successors . . . .

R.R. at 546a.  The Porter Deed contained the following reservation clause:

> Reserving unto the said [Porter and others], their heirs and assigns, owners of the remaining portion of said large tract of land, the right to lay water, gas, and drainage pipe and construct sewers under the surface of the said strip of land

---

[14] R.R. at 545a (emphasis added).

[15] R.R. at 556a (emphasis added).

[16] R.R. at 545a (emphasis added).

[17] R.R. at 556a (emphasis added).

13

to the Delaware River within the lines of any streets that may hereafter be opened across said strip of land to have and to hold the said lot or piece of land with the buildings and Improvements thereon erected hereinbefore described hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances Excepting as aforesaid unto the said [K&T], their successors and assigns, to and for the only proper use and behoof of the said [K&T], their successors and assigns forever.

R.R. at 557a. Clearly, if the Baldwin Deed was conveying a right-of-way, the Baldwin Deed would not be obligating K&T to put up fences and fill in the gaps between the land conveyed and the land retained. Similarly, if the Porter Deed was only conveying a right-of-way, there would be no need for the Porter Deed to reserve rights "under the service of the said strip of land" to owners of "the remaining land," as they would already have those rights. *Id.* Both clauses weigh heavily in favor of a finding that K&T had, in fact, been granted a fee, rather than a right-of-way. Finally, both the Baldwin and Porter Deeds contain tenendum and warranty clauses, evidencing the conveyance of a fee.

Examining the language in both the Baldwin and Porter Deeds in its entirety, and considering the fact that K&T paid significant consideration for both strips of land, the operative words of conveyance in both the Baldwin and Porter Deeds were present tense, both deeds referenced a strip of land or tract of land, as opposed to a right, both deeds included habendum, tenendum and warranty clauses, and both deeds contained rights given or retained that evidenced a conveyance of a fee, this Court concludes that the trial court properly determined that the Baldwin and Porter Deeds conveyed the Disputed Strip to K&T in fee simple. Consequently, K&T's successor, Conrail, was able to convey the Disputed Strip to the City in fee simple.

However, Newman also asserts that because the highway exception applies to railroads, it owns the Disputed Strip to the center line. Newman cites

14

*Dellach v. DeNinno*, 862 A.2d 117 (Pa. Super. 2004), to support its position. The *Dellach* Court reiterated:

> It is well settled that a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the center line of such highway or easement[.] A railroad is a highway within the meaning of this rule[.]
>
> *Fleck*, 156 A.2d at 834 (citations omitted).

*Dellach*, 862 A.2d at 119. Thus, "[w]hen a railroad abandons an easement, the right-of-way is extinguished and the land is owned in fee simple by the owner or owners of the land on either side of the right-of-way." *Id.* at 118.

> But, as expressed more fully by the Pennsylvania Supreme Court:
>
> It may now be regarded as settled by our decisions that a conveyance of land bounded by a public road or street gives the grantee title to the middle of the road or street, **if the grantor had the title to it** and did not expressly or by clear implication reserve it.

*Oliver v. Ormsby*, 73 A. 973, 975 (Pa. 1909) (emphasis added) (quoting *Neely v. City of Phila.*, 61 A. 1096, 1098 (Pa. 1905)).

K&T was granted the Disputed Strip in 1887 and 1891 in fee, and Newman was not granted its property until 1946, the earliest of its deeds. *See* R.R. at 575a. Further, apart from one parcel,[18] K&T did not convey Newman's properties to Newman. Rather, they were part of the Baldwin and Porter tracts that were sold to new owners and, eventually, to Newman. Thus, because the Baldwin Association

---

[18] This parcel was formerly part of the Porter Tract. In 1967, the Connecting Railway Company (K&T's successor) deeded a parcel along Devereaux Street, north of the Disputed Strip, to Morrissey. *See* R.R. at 661a (Connecting Railway Deed). The conveyance listed the railroad line as a boundary and specified that the land on the other side of that boundary would be the "remaining land of said [Connecting] Railway Company." R.R. at 662a (Connecting Railway Deed). Morrissey in turn sold this parcel to Newman in 1985. *See* R.R. at 56a (Devereaux Deed). Because the Connecting Railroad Deed "expressly . . . reserve[d] it[,]" Newman has no title to the center line of this portion of the Disputed Strip. *Oliver*, 73 A. at 975.

15

and Porter and others had already conveyed the Disputed Strip to K&T in fee, the Baldwin Association and Porter and others did not have title to the Disputed Strip when they sold the remaining land. As a result, because the grantors did not have title to the Disputed Strip, the conveyance of the land bordered by the Disputed Strip to Newman did not give Newman title to the center line of the Disputed Strip.

Lastly, Newman contends that the City is bound by the stipulation entered on November 13, 2015, between 5250 Unruh Avenue Associates and Dock TMC & Realty Corporation, and the City (Unruh Stipulation) and, since the City stated therein that it did not own that portion of the strip in fee, it cannot claim it owns the Disputed Strip in fee. Significantly, as to the land that covered certain portions of the real property located at 5200 and 5250 Unruh Avenue (Abandoned Railroad Right-of-Way), the Unruh Stipulation provides: "The City has no ownership, leasehold, estate or property interest of any kind in any portion of 5200 Unruh Avenue or 5250 Unruh Avenue, including, but not limited to the Abandoned Railroad Right[-]of[-]Way." R.R. at 697a.

However, unlike the Baldwin and Porter Deeds, the Unruh Deed specified, in pertinent part:

> Doth grant bargain and sell unto the said [K&T] their successors and assigns **the full right**[,] **liberty and privilege** of laying down and forever establishing operating and using a [r]ail[]road with one or more tracks as the said [K&T] may deem necessary or advantageous through[,] over and upon <u>All that Certain strip or piece of land . . . .</u>

R.R. at 710a (bold emphasis added). The Unruh Deed also included:

> Together with the free and **uninterrupted right and privilege** of passing at all times hereafter forever over[,] through and along the same with or without locomotive passenger freight baggage[,] mail or other cars[.]

16

> And together with **the right liberty and privilege** of [c]onstructing[,] erecting[,] maintaining and using upon the said above described strip or piece of land . . . .

R.R. at 711a (emphasis added).

The language in the Unruh Deed evidences a clear intent to convey a right as opposed to a fee. Consequently, the City agreed in quiet title litigation that it has no property interest in 5200 or 5250 Unruh Avenue, including the railroad corridor on those properties. Nothing in the terms of the Unruh Stipulation applies to the Disputed Strip, which is a different piece of property with a separate deed history.

In the alternative, Newman argues that the trial court erred as a matter of law or abused its discretion in holding that Newman was not entitled to an easement over the Disputed Strip, and by not providing Newman with the opportunity to present further evidence on the easement issue despite expressly stating that Newman would be given such an opportunity. Specifically, Newman contends that it is entitled to an easement in three ways: (1) pursuant to the now-repealed Railroad Act of 1849 (Railroad Act);[19] (2) by necessity; and (3) by implication. Newman claims that, had the trial court fully considered these issues and/or allowed for the presentation of evidence in this regard, all the requirements for an easement under the Railroad Act, by necessity and by implication, were satisfied and met.

The City rejoins that the Railroad Act applied to eminent domain takings of land for railroad purposes and, thus, does not apply to the instant case.

---

[19] Act of February 19, 1849, P.L. 79, repealed by Section 2 of the Act of July 1, 1978, P.L. 598. Any rights that vested under the Railroad Act remained after the Railroad Act was repealed. *See Estate of Spickler v. Cnty. of Lancaster Bd. of Comm'rs*, 577 A.2d 923, 925 n.1 (Pa. Super. 1990).

17

Further, the City asserts that Newman has not satisfied the elements for an easement of necessity, nor has Newman satisfied the elements for an easement by implication. The City avers that Newman waived any argument as to whether it was precluded from presenting evidence on the easement issue for failure to raise it prior to its Post-Trial Motion.

Initially, former Section 12 of the Railroad Act[20] "require[d] that a railroad under these circumstances construct . . . a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require[.]" *Del., Lackawanna & W. R.R. Co. v. Shuman*, 115 A.2d 161, 162 (Pa. 1955). However, "in proceedings under the [Railroad Act], there must be a taking." *Darlington v. United States*, 82 Pa. 382, 388 (1876); *see also Marsh v. Lehigh & N.E.R. Co.*, 64 A. 366, 366 (Pa. 1906) (affirming the lower court which held that Section 12 of the Railroad Act "applies only where a railroad company constructs its road on lands taken in the exercise of the right of eminent domain, and when that happens the duty to maintain a crossing is imposed by the statute creating the duty"). Because the land in the instant case was acquired contractually, rather than by taking, the Railroad Act does not apply.

Notwithstanding, Newman relies on *Estate of Spickler v. County of Lancaster Board of Commissioners*, 577 A.2d 923 (Pa. Super. 1990), to support its alleged entitlement to an easement under the Railroad Act. Therein, the *Spickler* Court quoted from a lower court decision, opining:

> Under the plain meaning of the [Railroad] Act . . . , **a property owner whose land was severed by the taking of a right-of-way for railroad purposes** was given a vested right to a private crossing on their own lands over the railroad's right-of-way. It is a right as sacred as any

---

[20] 67 P.S. § 631, recodified at 15 P.S. § 1401, then transferred to 15 P.S. § 4291.

> other property right. It was granted by the [s]tate, and no power but that of the [s]tate could deprive them of it: *Green v. Baltimore & Ohio R*[*.R.*] *Co.*, . . . [91 A. 248] [(Pa. 1914)].

*Spickler*, 577 A.2d at 924 (emphasis added). However, Newman's land was not severed by the taking of a right-of-way for railroad purposes. The Baldwin Association and Porter and others conveyed the Disputed Strip to K&T **before** Newman acquired its properties. Thus, *Spickler* is inapposite. Accordingly, Newman is not entitled to an easement pursuant to the Railroad Act.

Concerning an easement by necessity, the Pennsylvania Supreme Court has explained:

> The three fundamental requirements for an easement by necessity are:
>
> > 1) the titles to the alleged dominant and servient properties must have been held by one person; 2) this unity of title must have been severed by a conveyance of one of the tracts; **and** 3) the easement must be necessary in order for the owner of the dominant tenement to use his land, **with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement**.
>
> *Youst* [*v. Keck's Food Serv., Inc.*], 94 A.3d [1057,] 1075 [(Pa. Super. 2014)]. We have long recognized that a 'right[-]of[-]way from necessity over the land of another . . . is always of strict necessity.' *Ogden v. Grove*, 38 Pa. 487, 491 (1861) (internal citations and quotation marks omitted). Thus, a right[-]of[-]way never exists 'when a man can get to his own property through his own land,' and '[c]onvenience is no foundation for the claim.' *Id.*

*Bartkowski v. Ramondo*, 219 A.3d 1083, 1092 (Pa. 2019) (emphasis added). "An easement by necessity is created when, after severance from an adjoining property, a piece of land is without access to a public highway." *Tricker v. Pa. Tpk. Comm'n*, 717 A.2d 1078, 1082 (Pa. Cmwlth. 1998).

Here, Newman cannot show that any claimed necessity existed at the time that the Baldwin Association and Porter and others severed the Disputed Strip from the surrounding land. The riverfront parcels were accessible via Dark Run Lane and Robbins Street. The Baldwin Association's and Porter and others' successors-in-interest later subdivided the lots to include parcels that did not abut those streets, but the eventual owners (including Newman) would have been on notice of that fact. Because there was a lack of unity of ownership when the alleged necessity arose, Newman cannot satisfy the third element. Accordingly, Newman is not entitled to an easement by necessity.

> Likewise,
>
> an easement by implication is established 'where an owner of land subjects part of it to **an open**, **visible**, **permanent and continuous servitude or easement in favor of another part**[y].' *Tosh v. Witts*, . . . 113 A.2d 226, 228 ([Pa.] 1955). If an owner 'then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this [sic] irrespective of whether or not the easement constituted a necessary right[-]of[-]way.' *Id.*

*Cunningham v. Cronin*, 206 A.3d 569, 572 n.4 (Pa. Super. 2019) (emphasis added).

Newman relies upon the following clause in the Porter Deed to support its entitlement to an easement by implication:

> It being understood and agreed by and between the parties hereto that the said [K&T] shall and will construct planked road crossings at the intersections of their [r]ailroad with the said streets as they shall be opened and shall also during the progress of any construction work provide temporary crossing for the use of the said [Porter and others], for themselves respectively . . . .

R.R. at 557a. However, an agreement to provide crossings at intersecting streets does not establish an easement in favor of Newman, as its properties do not contain any intersecting streets with the Disputed Strip. Further, any temporary easement

20

provided during the construction of the railroad ended when the construction ended. Because Newman cannot show that any easement existed at the time the Disputed Strip was conveyed, or that the parties intended any additional easements, Newman is not entitled to an easement by implication.

Finally, because this Court concludes that the trial court properly determined that Newman was not entitled to an easement, and Newman has not proffered what evidence it was either precluded from presenting, nor would have presented to the trial court that would have affected said determination, there is no merit to Newman's argument that the trial court erred as a matter of law or abused its discretion by not providing Newman with the opportunity to present further evidence on the easement issue.

For all of the above reasons, this Court affirms the trial court's orders.

_____

ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Newman & Co., Inc.,                     :
          Appellant                 :
                                  :
                                  :
        v.                              :
                                  :
                                  :   No. 536 C.D. 2020
City of Philadelphia                    :

## O R D E R

AND NOW, this 8th day of April, 2021, the Philadelphia County Common Pleas Court's April 12, 2019 and March 6, 2020 orders are affirmed.


_____
ANNE E. COVEY, Judge