J-A17016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH FRANCESKI AND BERNADETTE FRANCESKI, ADMINISTRATRIX OF THE ESTATE OF MICHAEL FRANCESKI | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| LINDE CORPORATION AND RAIL-TRAIL COUNCIL OF NORTHEASTERN PENNSYLVANIA, INC. | : : : : | No. 1667 EDA 2021 |

Appeal from the Judgment Entered December 9, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
71-Civil-2019

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 13, 2022**

Appellant Linde Corporation[1] appeals from the judgment[2] entered in this

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant conveyed an easement to Rail-Trail Council, which maintains a rail trail on the disputed property.  Rail-Trail Council has filed a separate appeal, which has been docketed at 1681 EDA 2021.

On December 3, 2021, Rail-Trail Council filed an unopposed motion to consolidate both cases.  On December 10, 2021, this Court issued an order denying Rail-Trail Council's motion without prejudice and explaining that, if the appeals were consolidated, Appellant and Rail-Trail Council would be limited to filing one consolidated brief.  Appellant and Rail-Trail Council subsequently elected to file separate briefs and neither party renewed the motion for consolidation.

[2] Appellant filed its notice of appeal on August 17, 2021, after the trial court issued an amended verdict and order following the hearing on the parties' post-trial motions.  Generally, an appeal to this Court properly lies from the

*(Footnote Continued Next Page)*

quiet title action filed by Joseph Franceski and Bernadette Franceski, Administratrix of the Estate of Michael Franceski (Appellees). Appellant argues that the trial court erred in failing to dismiss Appellees' quiet title action and concluding that Appellant had an easement in the disputed property, rather than a fee simple interest. For the reasons that follow, we reverse the judgment, vacate the trial court's order, and remand with instructions.

The underlying facts of this matter are well known to the parties. *See* Am. Trial Ct. Op., 7/21/21, at 2-5. Briefly, Appellees own a 293-acre parcel of undeveloped land in Wayne County. The disputed property is a 12.8-acre parcel of land, referred to by the parties as a "railroad right-of-way," which is located within the boundaries of Appellees' property. The primary issue in this case is whether the 1890 origination deed conveyed a fee simple interest in the disputed property to OCS Railroad Company, in which case the disputed property belongs to Appellant as successor-in-title. However, if the 1890 deed granted OCS Railroad Company an easement, and Appellant subsequently abandoned the easement, then the disputed property belongs to Appellees.

---

entry of judgment, not from the order disposing of post-trial motions. *Mackall v. Fleegle*, 801 A.2d 577, 580 (Pa. Super. 2002). Nevertheless, a final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. *Drum v. Shaull Equipment and Supply Co.*, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001). Because the trial court subsequently entered final judgment on December 9, 2021, Appellant's notice of appeal relates forward to that date. *See* Pa.R.A.P. 905(a)(5) (providing that a notice of appeal filed after a court's determination, but before the entry of an appealable order, shall be treated as filed after such entry and on the day thereof). Therefore, there is no jurisdictional impediment to our review, and we have amended the caption accordingly.

In 2019, Appellees filed an action to quiet title against Appellant and Rail-Trail Council. *See* Compl., 2/21/19, at 1-7. Therein, Appellees alleged that although the 1890 deed conveyed a property interest to Appellant's predecessor in title, it was "only a right-of-way," as Appellees retained "interest in the surface area below" the disputed property. *Id.* at 5. Therefore, Appellees sought to (1) confirm that Appellees were the owners of the disputed property; (2) confirm Appellees' ownership interest in the disputed property by compelling Appellant and Rail-Trail Council to commence an action in ejectment; and (3) compel Appellant and Rail-Trail Council to admit the validity or invalidity of Appellees' claim of ownership interest in the disputed property. *Id.* at 6.

Appellant filed an answer and new matter in response. *See* Ans. and New Matter, 4/25/19, at 1-16. Therein, Appellant asserted that it was "in possession of the disputed property, together with [] Rail-Trail, which [had been] granted an easement by [Appellant] to maintain a rail trail." *Id.* at 6. Further, Appellant argued that the disputed property "remained vested in fee in the OCS Railway Company and its successors and assigns since 1890." *Id.*

The matter proceeded to a non-jury trial on November 23, 2020. At trial, Appellees introduced a copy of an 1891 deed, which referred to the interest conveyed in the 1890 deed as an easement. Both parties presented testimony from lay witnesses and expert witnesses in support of their respective positions.

At the conclusion of trial, the parties filed proposed findings of fact and conclusions of law. Appellant reiterated that (1) Appellees were not in possession of the disputed land; (2) the 1890 deed clearly conveyed a fee simple interest to Appellant's predecessor in title; and (3) because Appellant owned the disputed property in fee simple, Appellees had no ownership interest.

On April 28, 2021, the trial court issued an opinion and verdict in favor of Appellees. *See* Trial Ct. Op., 4/28/21, at 1-13. Therein, the trial court explained that the 1891 deed provided "the necessary background in order to demonstrate the grantor's intent" with respect to the 1890 conveyance of the disputed parcel. *Id.* at 10. After considering the language in both deeds, the trial court concluded that the 1890 deed conveyed an easement to Appellant's predecessor in title, that the easement was abandoned after the rails and superstructure were removed, and that, as a result, the encumbrance on the property was removed and extinguished. *Id.* at 11-12.

Appellant and Rail-Trail Council filed a joint post-trial motion in which they claimed, among other things, that the trial court erred in ruling on Appellees' action to quiet title despite the fact that Appellees failed to establish possession. *See* Post-Trial Mot., 5/7/21, at 3. In response, the trial court issued an amended opinion and verdict. Therein, the trial court explained that although Appellees did not establish actual possession, they were entitled to relief because they established a right to immediate possession. Am. Trial Ct. Op., 7/21/21, at 11. The trial court also noted that the 1890 deed was

ambiguous and that, therefore, it was necessary to consider the language in the 1891 deed. *Id.* at 13. Ultimately, the trial court reached the same conclusions regarding the rights conveyed by the 1890 deed. *Id.*

Appellant filed a timely notice of appeal. The trial court did not order Appellant to file a Pa.R.A.P 1925(b) statement and did not file a Rule 1925(a) opinion.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Did the trial court err as a matter of law in failing to dismiss [Appellees'] quiet title action and require [Appellees] to proceed with an action in ejectment when the trial court concluded that [Appellees] were not in possession of the railroad right-of-way and a plaintiff must be in possession of the real property in controversy in order to proceed with a quiet title action?

2. Did the trial court err as a matter of law in relying upon a later 1891 deed in determining the nature of the interest conveyed by an 1890 deed and in concluding that the exception clause in the 1891 deed indicates that the interest conveyed by the 1890 deed is merely an easement when the 1890 deed is not ambiguous and the 1891 deed could not retroactively limit the fee interest conveyed by the 1890 deed?

3. Did the trial court err as a matter of law in interpreting an 1890 deed as granting the railroad company merely an easement over a railroad right-of-way and not a fee simple interest when the 1890 deed contains a granting clause that uses the words "grant, bargain, sell, and convey" in the present tense, contains a general warranty clause, a habendum clause, and a tenendum clause, does not limit the railroad company's rights to constructing and operating a railroad, does not contain any language releasing the railroad company from liability, and excepts and reserves for the grantor the coal and right to mine it as though the grantor remained the owner in fee simple?

Appellant's Brief at 4-5 (some formatting altered).

### Dismissal of Quiet Title Action

In its first issue, Appellant argues that the trial court erred by granting Appellees relief on a quiet title action despite Appellees' failure to establish that they had actual possession of the right-of-way. *Id.* at 36. Appellant contends "because [Appellant and Rail-Trail Council] were in undisputed physical possession of the [right-of-way], the correct procedure was for [Appellees] to seek ejectment and not quiet title." *Id.* at 37. Accordingly, Appellant asserts that the court should have dismissed Appellees' complaint and required Appellees to proceed with an action in ejectment. *Id.*

Appellees concede that they did not have possession of the right-of-way at the time they filed the action to quiet title. Appellees' Brief at 18. However, Appellees claim that they are nonetheless entitled to pursue a quiet title action under Pa.R.Civ.P. 1061(b)(2). *Id.* at 19.

In reviewing Appellant's claim, we are guided by the following principles:

When reviewing an equitable decision, like a quiet-title action, our scope and standard of review are deferential. As this Court has explained, we will reverse only where the trial court was palpably erroneous, misapplied the law, or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it. Moreover, the function of this Court on an appeal from an adjudication in equity is not to substitute our view for that of the lower tribunal; [we are] to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal . . . . when reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence.

*Calisto v. Rodgers*, 271 A.3d 877, 881 (Pa. Super. 2022) (*en banc*) (citation

and footnote omitted, formatting altered).

An action to quiet title may be brought either to compel an adverse party

to commence an action of ejectment, or, where an action of ejectment will not

lie, to determine the interest in a title in the land. **See** Pa.R.C.P. 1061(b)(1)-

(2).

> Ordinarily, the plaintiff in an action to quiet title must be in possession of the land in controversy; **if he is out of possession, his sole remedy is an action in ejectment**. An action to quiet title may be brought only where an action in ejectment will not lie. Ejectment, being a possessory action, can be maintained if the plaintiff has a right to immediate possession with the concomitant right to demand that the defendant vacate the land.

*Plauchak v. Boling*, 653 A.2d 671, 674 (Pa. Super. 1995) (citations omitted

and emphasis added).

"Ejectment is an action filed by a plaintiff who does not possess the land

but has the right to possess it, against a defendant who has actual

possession." *Billig v. Skvarla*, 853 A.2d 1042, 1049 (Pa. Super. 2004)

(citations omitted). "The purpose of an ejectment action as opposed to quiet

title is not to determine the relative and respective rights of all potential title

holders, but rather the immediate rights between plaintiff and defendant

involved in that particular litigation." *Id.* at 1049-50 (citations omitted). "The

crux of an ejectment action, therefore, rests with the plaintiffs' ability to

identify, by a preponderance of the evidence, the boundaries of a parcel of

land to which they are out of possession but for which they maintain paramount title." *Id.* at 1050-51 (citations omitted).

This Court has explained that "[p]ermitting an out-of-possession plaintiff to maintain an action to quiet title is impermissible because it constitutes an enlargement of the plaintiff's substantive rights as defined by statute, and thus exceeds the court's jurisdiction to proceed." *Plauchak*, 653 A.2d at 674 (citation omitted). However, while it is procedurally improper for an out-of-possession plaintiff to commence an action to quiet title, this Court has stated that "[e]ven where a plaintiff mistakenly institutes an action to quiet title instead of an action in ejectment, the appropriate remedy is to permit the plaintiff to amend his or her pleadings to conform to the proper action." *Id.* (citation omitted); *see also Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. 1996) (stating that "[t]his Court has previously determined that, even on appeal, we may amend the pleadings when necessary to conform to the proper form of action as established by the evidence" (citations omitted)); *Sutton v. Miller*, 592 A.2d 83, 88–89 (Pa. Super. 1991) (holding that although the trial court erred in failing to dismiss a quiet title action filed by an out-of-possession plaintiff, the error was not fatal to the claim because this Court may amend the pleadings to include an action in ejectment *sua sponte*).

Here, because Appellees did not have actual possession of the disputed land, their sole remedy was an action in ejectment. *See Plauchak*, 653 A.2d at 674. As such, the trial court should have directed Appellees to amend the complaint accordingly. *See id.*; *Sutton*, 592 A.2d at 88–89. In any event,

Appellees' failure to use the appropriate form of action is not fatal. *See Sutton*, 592 A.2d at 88–89. Therefore, rather than reversing the trial court's order, we will consider the claims of the parties solely in the context of an action in ejectment. *See id.*; *see also Moore*, 687 A.2d at 827.

### Interpretation of the 1890 Deed

Appellant argues that the trial court erred in relying on the 1891 deed to determine the nature of the interest conveyed by the 1890 deed. Appellant's Brief at 54. In support, Appellant contends that the "1890 deed clearly and unambiguously grants and conveys an interest 'in fee'" for the railroad right-of-way. *Id.* Further, Appellant argues that although the trial court implied that the 1890 deed was ambiguous in its amended opinion, the court "failed to make any findings of fact regarding the alleged ambiguity, nor did the court "specify what language [it found] ambiguous." *Id.* at 30. Therefore, Appellant concludes that the trial court "should not have resorted to an examination of any evidence beyond the four corners of the deed in determining the intent of the parties." *Id.* at 54.

Appellees respond that the trial court found that the 1890 deed was ambiguous because (1) it did not use terms such as "in fee, easement, and/or right-of-way;" and (2) it conveyed "an interest in only the 'surface' of the [disputed] property." Appellees' Brief at 19-20. Therefore, Appellees conclude that the trial court properly relied on the 1891 deed to determine the grantor's intent. *Id.* at 23.

When interpreting a deed, this Court has explained:

[A] court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. . . . To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed. . . .

In the absence of fraud, accident or mistake, the nature and quantity of the real estate interest conveyed must be ascertained from the deed itself and cannot be shown by parol. When the language of the deed is clear and free from ambiguity, the intent of the parties must be determined from the language of the deed. With respect to unambiguous deeds, a court must ascertain what is the meaning of the words used, not what may have been intended by the parties as shown by parol.

*Wright v. Misty Mt. Farm, LLC*, 125 A.3d 814, 818-19 (Pa. Super. 2015) (citations omitted).

"Whether an ambiguity exists is a question of law subject to plenary review. However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier of fact." *PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001) (citations omitted).

The terms of the instrument conveying the interest are interpreted by applying general principles of contract law. Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract. Where a term is ambiguous and susceptible of more than one

- 10 -

reasonable interpretation, however, the court is free to receive extrinsic, i.e., "parol evidence," to resolve the ambiguity. A contract will be found ambiguous: if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous **by the mere fact that the parties do not agree on the proper construction.** Ambiguity within a contract may be latent or patent. A patent ambiguity appears on the face of the contract and is a result of defective or obscure language. Although Pennsylvania law provides that "parol evidence" may not be introduced unless the language of the written agreement is ambiguous on its face, extrinsic facts and circumstances may be proved to show that language apparently clear and unambiguous on its face is, in fact, latently ambiguous.

*Baney v. Eoute*, 784 A.2d 132, 136 (Pa. Super. 2001) (citations and some quotation marks omitted, emphasis added); *see also Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 n.2 (Pa. Super. 1984) (stating that the latent ambiguity "exception to the general rule against parol evidence is expectably limited" and usually arises when "a writing refers to a particular person or thing and is thus apparently clear on its face, but upon application to external objects is found to fit two or more of them equally" (citations omitted)); *Wysinski v. Mazzotta*, 472 A.2d 680, 683 (Pa. Super. 1984) (explaining that "[t]here can be no latent ambiguity where, as here, there was land owned by the grantor which satisfied the description contained in the deed of conveyance").

Here, the granting clause of the origination deed states, in relevant part,

as follows:

> This indenture, made the twenty-fifth day of March in the year of our Lord one thousand eight hundred and ninety between the president, managers, and company of the Delaware and Hudson Canal Company, party of the first part and the Ontario Carbondale and Scranton Railway Company, party of the second part. Witnesseth, that the said party of the first part, as well for and in consideration of the fulfillment of the covenants and agreements hereinafter mentioned to be kept and performed by and on the part of the said party of the second part, as for and in consideration of the sum of Twenty-eight Thousand Six Hundred and Eighty-eight ($28,688.00) Dollars, lawful money of the United States of America, unto the said party of the first part will and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the said party of the second part, its successors and assigns, the surface or right of soil of the following pieces or parcels of land, bounded and described as follows . . . .

Deed at DB 87, P 452, with the Recorder of Deeds of Wayne County (1890

Deed).

The deed also includes the following language which pertains solely to

the disputed parcel:

> Another of them[3] being the moiety or undivided one-half interest (**being the interest of the party of the first part**) in the surface of all that certain, piece or parcel of land situate partly in the Township of Clinton, County of Wayne and State of Pennsylvania and partly in the Township of Clifford, County of

---

[3] As mentioned previously, the right-of-way at issue in this case was one of twenty conveyances made in the 1890 deed. The remaining nineteen conveyances are not at issue in this case.

Susquehanna and State of Pennsylvania . . . .[4] Being part of a tract of land, **an undivided one-half interest in which Anna M. Olyphant by deed dated 28th May A.D. 1874, recorded in the office for the recording of deeds [] in and for Wayne county . . . conveyed to the president, mangers, and company of the Delaware and Hudson Canal Company in fee, as by reference thereto will more fully appear.**

*Id.* at 463-65 (emphases added).

Finally, the deed the contains a clause reserving "all the coal and other mineral" rights to the grantor, which states:

And the said party of the first part hereby except and reserve to themselves their successors and assigns, all the coal and other minerals under, in or upon each and every of the above described parcels of land, together with the unrestricted right and privilege of mining and removing the same, or any part thereof, and of making, driving, using an occupying tunnels, passages and weighs under the surface of said lands, for the purpose of mining and removing any coal or other minerals upon or from said lands, or whom or from any lands adjoining or convenient there to at their discretion as fully and entirely **as if the said party of the first part their successors or assigns remained the owners in fee simple of said surface or right of soil.**

*Id.* at 467 (emphasis added).

As noted previously, the trial court concluded that the 1890 deed was ambiguous and that, therefore, it was necessary to consider the language in the 1891 deed.  Am. Trial Ct. Op., 7/21/21, at 13.

Following our review of the record, we find no basis to conclude that the language in the 1890 deed was ambiguous.  ***See PARC Holdings, Inc.***, 785

---

[4] The conveyance also includes a lengthy description of the property's boundaries and geographical location.  However, because the parties do not dispute the description of the property, we need not restate it here.

- 13 -

A.2d at 112.  The granting clause clearly states the grantor's intent to convey the surface and soil rights for twenty parcels of land to the grantee.  ***See*** Deed at DB 87, P 452.  With respect to the disputed property, the deed states that the grantor acquired the parcel from its predecessor in title **in fee**, and that it was the grantor's intent to convey its ownership interest for that parcel to the grantee.  ***See id.*** at 463-65.  Finally, the grantor included a provision reserving its sub-surface rights to the property "**as if** the [grantor] remained the owners in fee simple of said surface or right of soil."  ***Id.*** at 467 (emphasis added).

Under these circumstances, we conclude that the 1890 deed is not ambiguous,[5] and that the trial court erred as a matter of law in considering parol evidence when interpreting the 1890 deed.  ***See Wright***, 125 A.3d at 818-19; ***PARC Holdings, Inc.***, 785 A.2d at 112.  Accordingly, we will confine our review of Appellant's remaining claims to the express language of the 1890 deed.

_____

[5] We note that, even if the 1890 deed referred to the disputed property as a "railroad right-of-way," it would not have affected our conclusion.  As our Supreme Court noted in ***Brookbank***, "[t]he interest acquired by a railroad was unknown to the common law.  This comparatively new interest in land is without a technical legal name.  Some of the early cases refer to it as an easement, while later cases call it a base or conditional fee[.]"  ***Brookbank v. Benedum-Trees Oil Co.***, 131 A.2d 103, 111 n.23 (Pa. 1957) (citations omitted).  As such, "the vital thing . . . is not the name given to the estate acquired by the railroad company," but "the rights acquired . . . ."  ***Id.*** (citation omitted).

**Appellant's Ownership Interest**

Appellant argues that the trial court erred by "interpreting the 1890 deed as granting the railroad company merely an easement over the railroad right-of-way and not a fee simple interest." Appellant's Brief at 38. In support, Appellant argues that (1) "the parties themselves referred to the interest conveyed as being a fee simple interest[,] and included words like 'successors and assigns' and 'forever' [which] clearly indicate the parties intent to convey a fee simple interest;" (2) "the *Brookbank* factors clearly indicate that the interest conveyed was a fee simple interest and not merely an easement;" (3) the description of the property as a "right-of-way" does not appear in the 1890 deed and could refer equally to both an easement and a fee interest; (4) the trial court erred in interpreting the term "surface" as granting an easement; (5) the trial court erred in concluding that the words "in fee" did not appear in the 1890 deed because the description for the right-of-way states that the grantor received it "in fee." *Id.* at 39, 41, 48, 50, 52.

A fee simple interest in land endures until the current holder dies without heirs. *See*, *e.g.*, *Herr v. Herr*, 57 A.2d 1280, 1285 (Pa. Super. 2008). "Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." *Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa. Super. 2005) (citations omitted).

In contrast, an easement is "a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special purpose not inconsistent with a general property in the owner." ***Clements v. Sannuti***, 51 A.2d 697, 698 (Pa. 1947) (citations omitted, formatting altered).

In ***Brookbank***, our Supreme Court addressed a property owner's claim that the "railroad company had simply a 'right of way' across his land for railroad purposes and, upon the cessation of its use for railroad purposes . . . the land within the 'right of way' reverted to him as the present owner of the fee." ***Brookbank***, 131 A.2d at 105-06 (footnote omitted). Initially, the ***Brookbank*** Court explained that "[a]n examination of [the] agreement in its entirety, including all its language," was required to determine whether the parties intended to convey a fee or an easement. ***Id.*** at 111. The Court then identified several factors that may clarify the nature of the property conveyed: (1) the amount of consideration paid;[6] (2) the operative words of conveyance and whether they are past or present tense; (3) whether the deed references a strip, parcel, or tract of land, as opposed to a right to use the land; (4) the

---

[6] The ***Brookbank*** Court stated that "in the absence of any evidence as to value" of the land at issue, "a finding that the consideration was inadequate for conveyance of a fee simple title would be based on conjecture and surmise." ***Brookbank***, 131 A.2d at 108. Therefore, the Court concluded that the amount of consideration was "not reflective of the parties' intent" under the circumstances of that case. ***Id.***

In the instant matter, the amount of consideration paid for the disputed property is unclear, as it was only one of twenty parcels conveyed in the 1890 deed for a total sum of $28,688.00. Therefore, like the Court in ***Brookbank***, we conclude that the amount of consideration is not a deciding factor when determining the parties' intent in the instant case.

inclusion or omission of habendum,[7] tenendum,[8] and/or warranty clauses; and (5) the rights given or retained. *Id.* at 108-11.

With respect to the words of conveyance, the **Brookbank** Court noted that words "used in the past tense, do not, standing alone, compel an interpretation that a fee was intended to be conveyed," and that, although present-tense language may convey a fee simple interest, those terms must be read in the context of the agreement as a whole. *Id.* at 109.

Regarding the description of the property conveyed, the **Brookbank** Court explained:

> It is true that in other jurisdictions a judicial 'yardstick' has been established by the application of which conveyances to railroads granting or conveying a strip, parcel or tract of land are held to pass a fee simple title whereas conveyances which grant or convey a 'right' are held to pass only a limited estate.

*Id.* "However, this 'yardstick' is only applied in the absence of additional language cutting down or limiting, directly or indirectly, the estate conveyed, and is only applicable in this case as one of the factors to be considered in

---

[7] This Court has explained that "a habendum clause is the part of a deed that defines the extent of the interest being granted and any conditions affecting the grant." **Herr**, 957 A.2d at 1286 (citations omitted and some formatting altered).

[8] "The tenendum clause is the clause wherein the tenure of the land is defined and limited." **Newman & Co., Inc. v. City of Phila.**, 249 A.3d 1240, 1248 n.13 (Pa. Cmwlth. 2021). While we acknowledge that Commonwealth Court decisions are not binding upon this Court, we may refer to them for instructive purposes. **See Cunningham v. Cunningham**, 182 A.3d 464, 471 n.1 (Pa. Super. 2018).

attempting to determine the parties' intent." *Id.* (footnote and emphasis omitted).

Concerning the omission of habendum, tenendum, and warranty clauses, the *Brookbank* Court stated: "It seems inconceivable that the railroad would have omitted these clauses from an instrument of conveyance" if they intended to receive a fee simple estate. *Id.* at 110.

Finally, the *Brookbank* Court noted that the deed conferred certain rights on the grantee, such as "the right of entry, the right to use, construct, maintain and operate a railroad, the right to use earth, stones and gravel to grade and fill the roadbed[,]" all of which were "rights which naturally and lawfully arise from ownership of land in fee simple. If the parties intended the railroad to receive a fee in this land, this language would give it those rights which it already had." *Id.* (footnote omitted). Therefore, the Court stated that "[t]he only rational conclusion from this language is that the parties did not intend to vest in the railroad any interest in fee simple; any other construction does violence to the expressed grant of these rights to the railroad." *Id.*

Here, in contrast to the facts in *Brookbank*, the words "grant, bargain, sell and convey" are used in both the past and present tense in the 1890 deed, which refers to the grantor's rights and the rights being conveyed to the grantee. *See* Deed at DB 87, P 462 (stating that the grantor "has granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey its successors and assigns, the surface or right of soil of the

- 18 -

following pieces or parcels of land, bounded and described as follows . . .").

Further, the deed conveyed a specific parcel of land to the grantee, as opposed

to certain usage rights. *See id.*

The 1890 deed also contains a warranty clause, a habendum clause, and

a tenendum clause. The warranty clause states:

> [The grantor], for themselves and their successors, do covenant,
> promise and agree to and with the [the grantee], its successors
> and assigns, . . . in the quiet and peaceable possession of [the
> grantee], its successors and assigns, against all and every person
> and persons whomsoever lawfully claiming or to claim the same,
> by, from, through or under them, they shall and will warrant by
> these presents forever defend.

*Id.* at 469.

The tenendum and habendum clauses state:

> Together with all and singular the tenements, hereditaments,
> rights, privileges, and appurtenances, unto the said above
> mentioned and described premises belonging, or in any wise
> appertaining, and the reversion and reversions, remainder and
> remainders, rents, issues, and profits thereof, and also, all the
> estate, right, title, interest, property, possession, claim and
> demand whatsoever, as well at law, as in equity, of the said party
> of the first party, of, in and to the said above mentioned and
> described premises, and every part and parcel thereof, with the
> hereditaments and appurtenances (exception and reserving
> however, as aforesaid).
>
>        \*     \*     \*
>
> To have and to hold the above granted, bargained and described
> premises, and every part and parcel thereof, with the
> hereditaments and appurtenances unto the said party of the
> second part, its successors and assigns, to the sole and proper
> use, benefit and behalf of the said party of the second part, its
> successors and assigns forever. Subject, however, to the
> aforesaid exceptions and reservations.

*Id.*

Based on our review of the record, we conclude that application of the *Brookbank* factors clearly demonstrates that the 1890 deed conveyed a fee simple interest in the property, rather than an easement. Specifically, we note that the deed includes both past and present-tense conveyance language, a warranty clause, a tenendum clause, and a habendum clause that is consistent with the language in the granting clause. Additionally, the deed does not contain a liability release, which would be inconsistent with the conveyance of a fee simple title. Finally, the deed conveyed a parcel of land to the grantee, rather than a usage right, and did not contain "language cutting down or limiting, directly or indirectly, the estate conveyed[.]"[9] *See Brookbank*, 131 A.2d at 109. Therefore, the trial court erred in concluding that Appellant had an easement in the disputed property, rather than a fee simple interest.

Accordingly, we reverse the judgment entered in this matter, vacate the order holding that Linde Corporation possessed an easement, and remand for the trial court to enter an order clarifying that Appellees' complaint is an

---

[9] As noted previously, the 1890 deed contained a clause in which the grantor reserved "all the coal and other mineral" rights in the disputed property. *See* Deed at DB 87, P 467. However, because the surface estate is distinct from the mineral estate, the reservation clause does not affect our conclusion that the grantor conveyed a fee interest in the disputed property to the grantee. *See Consolidation Coal Co.*, 875 A.2d at 326 (stating that because the surface estate and mineral estate are severable, "different owners may hold title to separate and distinct estates in the same land" (citation omitted)).

ejectment action[10] and award Linde Corporation a fee simple interest in the disputed property.

Judgment reversed and order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2022

---

[10] **See Sutton**, 592 A.2d at 89.